No. 87,975

STATE OF KANSAS, *Appellee*, v. DREW S. VANDERVORT, *Appellant*.

(72 P.3d 925)

Opinion filed July 25, 2003.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Randall L. Hodgkinson*, deputy appellate defender, was with him on the briefs for appellant.

*James L. Spies*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, S.J.: A jury convicted defendant Drew S. Vandervort of two counts of rape, one count of attempted rape, three counts of criminal sodomy, and seven counts of aggravated indecent liberties with a child. All counts stem from incidents involving his three daughters. Vandervort was sentenced to a controlling term of 586 months. The Court of Appeals held that the trial court did not err in denying his motion to suppress statements he made prior to a *Miranda* warning, that his confession coupled with corroborating testimony was sufficient evidence supporting his conviction for aggravated indecent liberties with a child, and that Vandervort had waived any argument that his criminal history was incorrect. The Court of Appeals affirmed in part, reversed the attempted rape conviction, and remanded the indecent liberties convictions for resentencing under the 1996-99 grid. *State v. Vandervort*, No. 87,975, unpublished opinion filed November 27, 2002. The matter comes before this court pursuant to its grant of Vandervort's petition for review.

We affirm in part, reverse in part, vacate the sentence, and remand for resentencing.

On Sunday, September 17, 2000, Drew S. Vandervort left his home in the family van with the intent to drive to Mexico. Vandervort wanted to separate himself from his family so he would no longer molest his children and so they could get help. Vandervort and his wife, Carol, had four children, daughters B.V., T.V., and A.V., and son D.V. Vandervort's van ran out of gas in a small town in Texas, and there he sought out a minister, confessed to him, and was persuaded to return to Kansas City to turn himself in.

Greg Knapp, a guidance counselor at B.V.'s school, testified that on September 18, 2000, he received a long distance phone call from Texas. The caller identified himself as Vandervort and said he was B.V.'s father. He wanted to confess he had done some bad things and told Knapp he had been molesting his children. The next morning, Vandervort called Knapp again and asked him to contact his wife and let her know the van was about a block away from the house. The following day, Carol came in to talk to Knapp about what to do. During their conversation, Vandervort phoned again and spoke of turning himself in.

Carol testified that she spoke to her husband on the phone in Knapp's office. She said he told her he was trying to turn himself in but no one would take him unless she pressed charges. Carol met her husband at 7th and Central, and they went to a police station in downtown Kansas City, Kansas. Carol stated she was told they would have to file a report at the Indian Springs Police Station.

On September 19, 2000, Vandervort, accompanied by his wife Carol, entered the front desk area of the Indian Springs Police Station to make a report. Officer David Abernathy of the Kansas City, Kansas, Police Department testified that Vandervort stated he wanted to turn himself in for having sex with his children. Abernathy said the officers at the front desk began filling out paperwork and advised Vandervort that charges would be brought against him. Abernathy testified that they were not interrogating Vandervort and that "[e]verything he said, he said from his own volition." At no point while filling out the report forms did the officers inform Vandervort of his right to remain silent. Abernathy said they were gathering information for the report, not conducting an interrogation.

Abernathy stated that after the point when Vandervort confessed to committing rape, sodomy, and incest, he did not feel Vandervort would be free to leave and said he would legally detain him. However, the officers never formally took Vandervort into custody or placed him under arrest because he made no attempt to leave. Abernathy decided almost immediately that a detective should be called.

Detective James Smith of the Kansas City, Kansas, Police Department went to the Indian Springs Police Station to meet with Vandervort after his commander told him Vandervort wanted to turn himself in for molesting his children. Before interviewing Vandervort, Smith interviewed Carol and took a short statement from her. Vandervort remained in the lobby of the station. He had not been handcuffed or placed under arrest, but Smith did not believe Vandervort was free to leave at that time.

Vandervort testified that he was not advised of his rights until he met with Smith. He said, as far as he knew, he was free to leave.

Smith testified that after identifying himself to Vandervort, he asked whether Vandervort wanted to speak with him. Smith stated that Vandervort indicated he wanted to talk to him. Smith accompanied Vandervort back to the conference room, then conducted a short interview with him after advising him of his *Miranda* rights. Vandervort placed his initials after each paragraph of the advice of rights form and signed a waiver of his rights that Smith gave him. Smith testified that Vandervort did not appear to be under the influence of any drugs or alcohol. Smith then proceeded to tape-record Vandervort's confession.

Vandervort confessed to Smith that he had molested his oldest daughter, B.V., and his younger two daughters "on many different occasions." He stated that he had sexual contact with B.V. more than 50 or 60 times, and that on the first occasion he had forcibly penetrated her.

The State charged Vandervort with rape, aggravated criminal sodomy, aggravated indecent liberties with a child, and attempted rape in a 71-count information. Before trial, however, due to the prosecutor's amendment of the information and dismissal by the trial court, Vandervort faced trial on only 13 counts.

Defense counsel filed a motion to suppress Vandervort's confession prior to trial. The trial court denied the motion to suppress, finding that Vandervort's statements to police were voluntary. In September 2001, the case proceeded to trial by a jury.

On September 6, 2001, the jury found Vandervort guilty of two counts of level 1 rape, one count of attempted rape, three counts of aggravated criminal sodomy, and seven counts of aggravated

indecent liberties with a child. Defense counsel filed a motion for durational and/or dispositional departure based on the fact that Vandervort would not have faced prosecution but for the fact that he turned himself in to police. At the September 21, 2001, sentencing hearing, the court denied the motion for departure. Vandervort was sentenced to a presumptive term of 586 months of confinement in the custody of the Department of Corrections, with 36 months of post-release supervision for the primary offense of rape. The sentencing court directed that Vandervort serve his 12 additional convictions concurrently.

Vandervort filed a timely notice of appeal of his sentence and the denial of his motion for a new trial. He set forth five assertions of error in his brief to the Court of Appeals, concerning the motion to suppress, sufficiency of the evidence, the jury instruction on attempted rape, his criminal history, and the sentencing grid. In an unpublished opinion, the Court of Appeals held: (1) the trial court did not err in denying the motion to suppress Vandervort's statements; (2) B.V.'s testimony corroborating Vandervort's confession was sufficient evidence to support his conviction for aggravated indecent liberties with A.V.; (3) Vandervort waived any argument that his criminal history was incorrect when his counsel stipulated to his history at sentencing; (4) the jury instruction on attempted rape was clearly erroneous since it covered potential facts outside the 2-year statute of limitations; and (5) the sentencing judge had applied the wrong sentencing grid.

The Court of Appeals reversed Vandervort's conviction for attempted rape but noted the reversal would have no apparent impact on his sentence since it was to run concurrent with the sentence for rape. The panel also held that Vandervort should be resentenced on his seven convictions for aggravated indecent liberties with a child and the one conviction for attempted rape using the 1996-99 Kansas Sentencing Guidelines Grid. The Court of Appeals affirmed Vandervort's remaining convictions.

We granted Vandervort's petition for review of the Court of Appeals' decision. Before this court, Vandervort contends that the Court of Appeals erred in affirming the denial of his motion to suppress and in refusing to consider the merits of whether a prior

Virginia conviction was appropriately classified in his criminal history.

## I. MOTION TO SUPPRESS

Vandervort claims that the Court of Appeals erred in affirming the district court's decision to deny his motion to suppress the statements he made to police prior to the time when he was apprised of his *Miranda* rights. He asks this court to remand this matter for a new trial.

"When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision ' "by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review." ' [Citations omitted.]" *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001).

The question presented is whether, under the facts presented, the police conducted a custodial interrogation of Vandervort without informing him of his *Miranda* rights, requiring suppression of his statements to police. On review, Vandervort disregards any argument concerning his confession to Detective Smith, focusing solely on his initial statements to the police officers at the front desk. Vandervort asserts that he was in custody and that the police conducted an interrogation of him when he walked into the police station and spoke with officers Abernathy and Anderson at the front desk. Vandervort does not point to any specific error in the Court of Appeals' analysis. He simply argues that the facts merit a finding that he was in custody and should have been advised of his *Miranda* rights when the officers began to ask questions when they began filling out their report forms.

Our Court of Appeals wrote:

"*Miranda* warnings are required only with respect to 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' *Miranda*, 384 U.S. at 444. *Miranda* 'does not apply outside the context of inherently coercive custodial interrogations for which it was designed. The warnings protect persons who, exposed to such interrogation without the assistance of counsel, otherwise might be

unable to make a free and informed choice to remain silent.' *Roberts v. United States*, 445 U.S. 552, 560-61, 63 L. Ed. 2d 622, 100 S. Ct. 1358 (1980).

"Vandervort walked into the police department crime report station to turn himself in for molesting his three daughters. No police report was on file for these crimes. The officers at the report desk took Vandervort's statements for the purposes of creating a report. Officer Abernathy testified that after approximately 5 to 6 minutes of hearing Vandervort's confession, he called Detective Smith to further question Vandervort and investigate the crimes. Officer Smith arrived approximately 10-15 minutes later. Before Vandervort made any further statements, Officer Smith properly informed him of his *Miranda* rights.

"There is substantial and competent evidence to support the trial court's finding that Vandervort knowingly and intelligently waived his *Miranda* rights before talking to Detective Smith. Any conversations he had with Officers Abernathy and Anderson before talking with Detective Smith were purely of his own volition, were used to create an initial report of the crime, and did not require a *Miranda* warning.

"In any event, the confession does not appear to have been the result of a custodial interrogation, as Vandervort came unbidden to the police station and voluntarily gave the confession."

Officer David Abernathy of the Kansas City, Kansas, Police Department testified that Vandervort stated he wanted to turn himself in for having sex with his children. Abernathy said the officers at the front desk began filling out paperwork and advised Vandervort that charges would be brought against him. Abernathy testified that they were not interrogating Vandervort and that "[e]verything he said, he said from his own volition." At no point while filling out the report forms did the officers inform Vandervort of his right to remain silent. Abernathy said they were gathering information for the report, not conducting an interrogation.

Abernathy stated that after the point when Vandervort confessed to committing rape, sodomy, and incest, he did not feel Vandervort would be free to leave and said he would legally detain him. However, Abernathy did not express his subjective thoughts, and the officers never formally took Vandervort into custody or placed him under arrest because he made no attempt to leave. Vandervort remained in the lobby of the station while Detective Smith questioned Carol. He had not been placed under arrest or handcuffed. Vandervort testified that as far as he knew, he was free to leave.

In *California v. Beheler*, 463 U.S. 1121, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983), the high court considered whether *Miranda* warnings were required if the suspect was not placed under arrest and voluntarily came to the police station for an interview. There, Beheler and several acquaintances killed a woman during an attempt to steal her hashish in the parking lot of a liquor store. Beheler's stepbrother, Danny Wilbanks, actually killed her after she refused to give them her hashish. A short time later, Beheler called police, telling them that Wilbanks had killed the victim and that the gun was hidden in the Behelers' backyard. Beheler consented to a search of the yard and police found the gun. Later that day, Beheler voluntarily went with police to the station for an interview, which lasted less than 30 minutes. The officers specifically told Beheler that he was not under arrest, and Beheler was allowed to return home. Five days later, police arrested Beheler in connection with the murder. After being warned of his *Miranda* rights, he gave a second taped confession. The California Court of Appeals held that the first interview was a custodial interrogation triggering the need for the *Miranda* warnings, and reversed Beheler's conviction. The *Beheler* court reversed the California Court of Appeals, finding:

"In the present case, the 'totality of circumstances' on which the court focused primarily were that the interview took place in a station house, and that Beheler was a suspect because he had spoken to police earlier. But we have explicitly recognized that *Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.' 429 U.S., at 495. That the police knew more about Beheler before his interview than they did about Mathiason before his is irrelevant, see n. 2, *supra*, especially because it was Beheler himself who had initiated the earlier communication with police." *Beheler*, 463 U.S. at 1125.

Similarly, in *Oregon v. Mathiason*, 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977), the United States Supreme Court held that no *Miranda* warnings were required after a parolee voluntarily went to the police station in response to a note left by an officer asking him to call, and submitted to questioning in a room with the doors closed. There the Court remarked: "[P]olice officers are

not required to administer *Miranda* warnings to everyone whom they question." *Mathiason*, 429 U.S. at 495.

Vandervort mistakenly relies on *Stansbury v. California*, 511 U.S. 318, 128 L. Ed. 2d 293, 114 S. Ct. 1526 (1994), as support for his position. In that case, police officers investigating the rape and murder of a 10-year-old girl thought Stansbury might have some knowledge relevant to the homicide but believed that another ice cream truck driver was their primary suspect. They went to Stansbury's home and asked if he would come to the station for questioning as a potential witness. Stansbury agreed and accepted a ride from police to the station. During questioning, Stansbury mentioned that he had been driving his roommate's turquoise American-made car on the evening in question, arousing the investigating detective's suspicions. A previous witness had told police that he had seen a man get out of a turquoise American sedan and throw something into the flood control channel where the girl's body was found. After Stansbury, responding to a further question, admitted to prior convictions for child molestation, rape, and kidnapping, the investigating detective terminated the interview and Stansbury was advised of his *Miranda* rights.

Stansbury filed a pretrial motion to suppress the statements made and any evidence discovered as a result, but the trial court denied the motion, finding that Stansbury was not "in custody." 511 U.S. at 321. The California Supreme Court affirmed Stansbury's conviction, setting forth a legal standard for deciding the issue of custody. The United States Supreme Court remanded the case to the California Supreme Court, redirecting the focus of that court's inquiry on custody to how a reasonable person in the suspect's position would perceive his or her situation.

"Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." 511 U. S. at 323.

Vandervort voluntarily came to the police station to turn himself in and thought he was free to leave at the time he answered the initial questions of the officers filling out the report. We find that

a reasonable person in Vandervort's position would not perceive that he or she was "in custody" of police, triggering the requirement of the *Miranda* warnings. We find no error in the district court's decisions to deny his motion to suppress the statements he made to police prior to the time when he was apprised of his *Miranda* rights.

## II. CRIMINAL HISTORY CLASSIFICATION

Vandervort contends that, despite acknowledging that it had jurisdiction under K.S.A. 21-4721(e) to consider the issue, the Court of Appeals refused to consider the issue of whether the district court appropriately classified his prior Virginia conviction in his criminal history.

"Resolution of a criminal history sentencing issue involves the interpretation of various provisions of the sentencing guidelines. The interpretation of statutes is a question of law, and, thus, the scope of review is unlimited." *State v. Taylor*, 262 Kan. 471, Syl. ¶ 4, 939 P.2d 904 (1997).

"The general rule is that a criminal statute must be strictly construed in favor of the accused. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. Under the fundamental rule of statutory construction, the intent of the legislature governs when that intent can be ascertained from the statute." *Taylor*, 262 Kan. 471, Syl. ¶ 5.

A. *Can an appellate court reach the merits of the issue of Vandervort's criminal history classification when there was no objection below?*

Vandervort contends the Court of Appeals erred in not reaching the merits of his criminal history appeal, finding instead that he "stipulated" to his criminal history and could not, therefore, claim his sentence was illegal. Vandervort would distinguish his case from other cases claiming the sentence imposed was illegal. In addition, Vandervort claims the Court of Appeals further erred by basing its analysis of his September 21, 2001, sentence on the 2002 amendments to K.S.A. 21-4715(c), which did not go into force and effect until July 1, 2002.

The Court of Appeals wrote:

"Pursuant to K.S.A. 21-4721(e), we have jurisdiction in any appeal to consider whether the sentencing court erred in determining the appropriate classification

of a prior conviction. However, this court has repeatedly held that a sentence within the wrong sentencing grid block under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, is not an illegal sentence when the criminal history category was stipulated to by the parties. [Citations omitted.] The justification behind this rule is that one who invites error by his or her own acts cannot then complain or take advantage of it on appeal. *Neal,* 25 Kan. App. 2d at 706.

"K.S.A. 21-4715(c) requires an offender to provide written notice to the district attorney and the court of the specific nature of the error in an offender's criminal history. See L. 2002, ch. 163, § 3. Vandervort failed to provide written notice of the errors with his criminal history now claimed on appeal. Further, he stipulated to the correctness of his criminal history at the sentencing hearing. We hold Vandervort waived any argument that his criminal history was incorrect."

The July 1, 1993, version of K.S.A. 21-4715 applies to Vandervort, not the 2002 amendment, which did not go into effect until July 1, 2002. The earlier version of the statute contains a requirement of written notice of any errors in the criminal history worksheet, nonetheless, in subparagraph (c):

"(a) The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.

"(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.

"(c) Upon receipt of the criminal history worksheet prepared for the court, *the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet.* The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence." (Emphasis added.)

While Vandervort was not required to specify the "exact nature of the alleged error" in the criminal history worksheet under the version of the statute in effect at the time of his sentencing, the statute required that he "immediately notify" the court and the district attorney "with written notice of any error." Compare K.S.A. 21-4715(c) and K.S.A. 2002 Supp. 21-4715(c). See also *State v. White,* 23 Kan. App. 2d 363, Syl. ¶ 2, 931 P.2d 1250 (1997) ("Where a defendant generally objects to his or her proposed criminal history in writing and raises specific objections at the hearing

to determine criminal history, such objections are sufficient under K.S.A. 21-4715[c] to require the State to prove its allegations of criminal history."). The Court of Appeals correctly determined that Vandervort failed to provide written notice of claimed errors within his criminal history worksheet in contravention of the requirements of K.S.A. 21-4715(c).

The Court of Appeals, however, treated the remarks of defense counsel at the sentencing hearing as Vandervort's admission in open court to the correctness of his criminal history. Prior case law interpreting K.S.A. 21-4715 holds that "[i]t is not defense counsel's place to admit to his or her client's prior offenses." *State v. Hankins*, 19 Kan. App. 2d 1036, 1047, 880 P.2d 271 (1994). In addition, "[a] defendant is entitled to review a proposed criminal history worksheet." *Hankins*, 19 Kan. App. 2d at 1047.

At the sentencing hearing, the following discussion took place on the record:

"THE COURT: . . . Have both attorneys had an opportunity to review the proposed PSI?

"[PROSECUTOR]: Yes, Your Honor.

"[DEFENSE COUNSEL]: Yes, Your Honor.

"THE COURT: Any additions or corrections?

"[PROSECUTOR]: Judge, I believe the correction—some corrections were made and amended one was presented to the court today. I don't think there were any additional corrections.

"[DEFENSE COUNSEL]: Judge, I have just been handed amended one and I think that's fine.

"[PROSECUTOR]: Bob, the changes are highlighted.

"[DEFENSE COUNSEL]: Right, I was told that."

No other comments appear on the record in regard to the presentence investigation sheet or Vandervort's criminal history. The record on appeal does not show that the trial court personally addressed Vandervort regarding his criminal history, or that Vandervort was afforded the opportunity to review the amended criminal history worksheet.

The general rule regarding review of an illegal sentence is that "[a] defendant who invites error by stipulating to his or her criminal history cannot request a correction of sentence under K.S.A. 22-

3504 after pronouncement of sentence." *State v. McBride*, 23 Kan. App. 2d 302, Syl. ¶ 3, 930 P.2d 618 (1996).

Vandervort acknowledges that his trial counsel failed to object to the criminal history at the sentencing hearing, but argues that, "[g]iven that counsel was handed the amended PSI at the sentencing hearing, no reasonable person would expect that he must provide a written notice of any error. Counsel should have further reviewed the PSI, but his failure should not be viewed as a stipulation by Vandervort." Despite the lack of an objection by defense counsel at the sentencing hearing, Vandervort contends that, under K.S.A. 21-4721(e), appellate courts have jurisdiction to consider a defendant's claim that the sentencing court erred in determining the appropriate classification of a prior conviction for purposes of criminal history. That statute provides, in pertinent part:

"(e) *In any appeal, the appellate court may review a claim that*:

(1) A sentence that departs from the presumptive sentence resulted from partiality, prejudice, oppression or corrupt motive;

(2) the sentencing court erred in either including or excluding recognition of a prior conviction or juvenile adjudication for criminal history scoring purposes; or

(3) *the sentencing court erred* in ranking the crime severity level of the current crime or *in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes.*" (Emphasis added.)

Vandervort further argues that this court should review the merits of his case under the exceptions set forth in *Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. ¶ 3, 434 P.2d 858 (1967). Those exceptions apply to appellate review of constitutional claims asserted for the first time on appeal. *State v. Gould*, 271 Kan. 394, 404, 23 P.3d 801 (2001); *Pierce*, 200 Kan. at 80-81; *State v. Boswell*, 30 Kan. App. 2d 9, 11, 37 P.3d 40 (2001). Vandervort's assertions of error do not include constitutional claims, but further research uncovered two cases relevant to our consideration of Vandervort's claim.

In *State v. Pope*, 23 Kan. App. 2d 69, 927 P.2d 503 (1996), the Court of Appeals reviewed the merits of the defendant's claim that her prior Missouri juvenile adjudications should not have been included in her criminal history under the Kansas Sentencing Guide-

lines Act despite defense counsel's failure to object at the sentencing hearing. Both the defendant and her attorney agreed at the hearing that the criminal history shown in the presentence investigation (PSI) report was accurate. On appeal, defendant conceded that she did not object before the sentencing court to the use of the Missouri juvenile adjudications. Citing K.S.A. 21-4721(e)(3), the *Pope* court found: "This court has jurisdiction to consider this issue notwithstanding Pope's failure to object to her criminal history at sentencing." *Pope*, 23 Kan. App. 2d at 79.

In *State v. Mosley*, 25 Kan. App. 2d 519, 965 P.2d 848 (1998), the defendant contended that the sentencing court erred in accepting his PSI report and finding he had admitted his criminal history after he stated on the record that he did not have a chance to talk to his attorney or review his proposed criminal history. Mosley argued on appeal that it was improper for his counsel to admit to his criminal history after he had initially objected to it. Finding the procedure employed by the sentencing court inappropriate, the Court of Appeals wrote:

"The PSI report should have been available prior to April 9, 1 day before sentencing. Also, Mosley's attorney should have had the opportunity to discuss the proposed criminal history with Mosley prior to the sentencing hearing.

"Nonetheless, during sentencing, Mosley did admit to his criminal history, specifically, his three prior person felonies. K.S.A. 21-4715 provides that if Mosley admitted his criminal history in court, the criminal history as summarized in the PSI report shall satisfy the State's burden of proof." 25 Kan. App. 2d at 527.

Noting that Mosley did not maintain on appeal that his criminal history was incorrect, the Court of Appeals affirmed his sentence.

In K.S.A. 21-4721(e), the legislature established appellate jurisdiction to consider whether the sentencing court erred in determining the appropriate classification of a prior conviction. Case law establishes precedent for granting appellate review of criminal history errors despite a stipulation or lack of an objection below under limited circumstances.

In the present case, where there was no oral stipulation by Vandervort in open court and no opportunity for him or counsel to review the amended criminal history worksheet prior to the hearing, we will proceed to the merits of his argument.

## B. *Criminal history score*

Vandervort maintains that the PSI report relied upon by the district court erroneously listed both of his 1980 Virginia convictions as person felonies rather than as nonperson felonies, resulting in a criminal history score of "B" when it should have been "C." He asks this court to remand the matter for resentencing with instructions to amend his criminal history to "C."

"The sentencing guidelines are based on two controlling factors: crime severity and criminal history of the defendant. In scoring criminal history, a distinction is made between person crimes and nonperson crimes. Generally, person crimes are weighed more heavily than nonperson crimes. [Citation omitted.] Designation of a crime as person or nonperson depends upon the nature of the offense. Crimes which inflict, or could inflict, physical or emotional harm to another are generally designated as person crimes. Crimes which inflict, or could inflict, damage to property are generally designated as nonperson crimes. [Citation omitted.]" *State v. Fifer*, 20 Kan. App. 2d 12, 15, 881 P.2d 589 (1994), *rev. denied* 256 Kan. 996 (1994).

The PSI report lists two prior adult felony convictions for Vandervort on September 10, 1980: indecent liberties and exposure. The State asserts that both offenses were properly classified as person crimes, while Vandervort argues that the exposure conviction should have been classified as a nonperson crime.

K.S.A. 2000 Supp. 21-4711(e) provides:

"Out-of-state convictions and juvenile adjudications will be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. *The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a non-person crime.* Convictions or adjudications occurring within the federal system, other state systems, the District of Columbia, foreign, tribal or military court are considered out-of-state convictions or adjudications. The facts required to classify out-of-state adult convictions and juvenile adjudications must be established by the state by a preponderance of the evidence." (Emphasis added.)

Vandervort first claims that his prior conviction for exposure pursuant to Virginia Code § 18.2-370 is not comparable to K.S.A. 2002

Supp. 21-3508 since the Kansas statute includes the element of "who has not consented thereto" while the Virginia Code does not. We note, however, that Vandervort concedes on appeal that K.S.A. 2002 Supp. 21-3508 is the closest approximation of Kansas statutes to Virginia Code § 18.2-370.

The Court of Appeals has stated:

"In determining criminal history, the sentencing court looks to the state in which the conviction occurred to determine if the crime is classified as a felony or misdemeanor. The court looks to the most comparable Kansas offense to determine whether the conviction is classified as a person or nonperson crime. K.S.A. 21-4711(e)." *State v. Hernandez*, 24 Kan. App. 2d 285, 287, 944 P.2d 188 (1997).

Vandervort confuses the term "comparable" with the concept of identical elements of the crime. For purposes of determining criminal history, the offenses need only be comparable, not identical. K.S.A. 2000 Supp. 21-4711(e). Since K.S.A. 2002 Supp. 21-3508 is the closest approximation to Virginia Code § 18.2-370, it constitutes the comparable offense.

Alternatively, Vandervort argues that if this court finds that Virginia Code § 18-2-370 is comparable to K.S.A. 2002 Supp. 21-3508, his prior conviction for exposure should be scored as a nonperson felony. Vandervort asserts that since it is unclear when the acts occurred giving rise to his convictions in this case, the jury could have convicted him for acts that occurred at any time during the period between November 6, 1996, and September 17, 2000, reflected in the charging documents. Vandervort argues that since K.S.A. 2002 Supp. 21-3508 was classified as a nonperson misdemeanor prior to July 1, 1998, and since the penalty imposed must agree with the provisions in effect at the time the offense was committed, he should be sentenced under the lower criminal history.

In support of his argument, Vandervort cites *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986). In *Jackson*, the court addressed an issue in which the crime of aggravated indecent liberties was amended to include sodomy during the charged time period provided to the jury. This amendment made the elements of sodomy and aggravated indecent liberties identical. The defendant argued

that because the two offenses were identical, he could be convicted of only the lesser of the two offenses.

The *Jackson* court pointed out that the defendant's argument failed to take into consideration the effective date of the latter statute. If the act of sodomy with a child occurred prior to July 1, 1984, the offense committed would be aggravated criminal sodomy; if, under the evidence, the jury were to conclude that the act occurred on or after July 1 and on or prior to the final charging date, the offense committed would be that of indecent liberties with a child. 239 Kan. at 471.

Jackson's conviction was reversed and remanded on other grounds. The court held that if, in a new trial, the jury finds that the act occurred during the alleged time period, and if the jury is uncertain as to whether the act was committed before or after the effective date of the amendment, then defendant could be convicted of the lesser offense only. 239 Kan. at 472.

In this case, it is uncertain when the acts occurred which the jury relied upon to convict Vandervort. Without that determination, Vandervort may have been convicted for acts which occurred prior to July 1, 1998. The State charged Vandervort with acts that occurred during a period between November 1, 1996, and September 17, 2000. The jury was instructed to consider this expansive period. With this uncertainty as to when each act relied upon by the jury occurred, Vandervort must be sentenced with the lower criminal history.

As this court has noted in previous cases:

"Our rule that the penalty parameters for an offense are fixed as of the date of the commission of the offense is fair, logical and easy to apply. Neither the State nor a defendant may maneuver a sentencing date to take advantage of or avoid a change in a statute." *State v. Sylva*, 248 Kan. 118, 121, 804 P.2d 967 (1991).

Vandervort's correct criminal history is "C."

Judgment of the Court of Appeals is affirmed in part and reversed in part. Judgment of the District Court is affirmed in part and reversed in part, and the sentence is vacated and remanded for resentencing pursuant to the direction of the Court of Appeals and based on a criminal history of C.

ABBOTT and GERNON, JJ., not participating.

LARSON, S.J., and BRAZIL, S.J., assigned.