NOT DESIGNATED FOR PUBLICATION

No. 114,778

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

DARRELL L. WILLIAMS,
*Appellee/Cross-appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed October 13, 2017. Conviction affirmed, sentence vacated, and case remanded with directions.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee/cross-appellant.

Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.

PER CURIAM: The State appeals the district court's sentencing decision which granted Darrell L. Williams' motion for a dispositional departure. Williams cross-appeals, arguing that his conviction should be reversed due to prosecutorial error and that his sentence is illegal due to improper calculation of his criminal history. The State concedes one error in Williams' criminal history, and we find one other. We thus affirm Williams' conviction but remand for resentencing.

1

*Factual and procedural background*

In February 2014, police officers responded to a report that Williams had become suicidal. Police officers arrested Williams based on an unrelated warrant. Williams initially cooperated with the police officers but became unruly after learning that his girlfriend was also being arrested pursuant to a warrant for her arrest. After "tussling" with Williams, two police officers restrained him by tasing him and securing him in a squad car. During the altercation, one of the officers scraped his elbow and the other cut his forearm.

Williams was charged with two counts of battery of a law enforcement officer with bodily harm and one count of interference with a law enforcement officer. At trial, the district court instructed the jury on the crimes of battery of a law enforcement officer resulting in physical harm, as well as on the lesser included offenses of battery of a law enforcement officer resulting in physical contact. The district court instructed the jury that to be guilty of battery of a law enforcement officer resulting in bodily harm, Williams had to "knowingly or recklessly cause bodily harm" to the officers. For the lesser included offense, the district court instructed the jury that Williams had to "knowingly cause physical contact . . . in a rude, insulting or angry manner."

During closing arguments, the State argued that Williams caused bodily harm to the officers by fighting them, and said "but for" Williams' actions the officers would not have been injured. The State also said that Williams chose to fight the officers and that "[e]verybody knows if you fight somebody, somebody might get hurt." The jury found Williams guilty as charged.

Williams filed a motion for a dispositional departure. At sentencing, the district court found his criminal history score an A. The district court granted Williams' motion for departure but did not articulate its reasons for doing so, saying only that it was willing

to give Williams "a chance," and that Williams' counsel did a good job pointing out the factors that could be considered to grant a departure.

The State appeals the district court's decision to grant Williams' motion for a dispositional departure. Williams cross-appeals, arguing that the State committed prosecutorial error by misstating the law during closing arguments and that the district court improperly calculated his criminal history score. We first address Williams' cross-appeal because it relates to his conviction.

*Did the State commit reversible error by misstating the law during closing arguments?*

Williams argues that the State committed prosecutorial error during closing arguments by emphasizing a "but for" causation test which implied that Williams could be found guilty if he had negligently caused the officers' injuries. Williams asserts that the State was required to prove actual or proximate causation and that the emphasis on "but for" causation misled the jury. He suggests that the police officers may have caused their own injuries by using excessive force, that their conduct was an intervening cause, and that the State's error prejudiced him because he did not proximately cause the officers' injuries.

We review claims of prosecutorial error by first determining if the prosecutor erred and then determining whether the defendant was prejudiced by the error. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional

3

constitutional harmlessness inquiry demanded by *Chapman*. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* __ U.S.__, 132 S. Ct. 1594, 182 L.Ed.2d 205 (2012)." *Sherman*, 305 Kan. at 109.

Because the error alleged here relates to causation, we use this constitutional harmless error standard. See *State v. Wilson*, No. 93,914, 2006 WL 2936592 (Kan. App. 2006) (unpublished opinion) (assuming error in causation was of constitutional magnitude).

"It is improper for the prosecutor to . . . misstate the legal standard of the burden of proof." *State v. Stone*, 291 Kan. 13, 18, 237 P.3d 1229 (2010). Here, the State did not explicitly argue that "but for" causation was the applicable legal standard. But it did so implicitly by repeatedly arguing during closing arguments that "but for the defendant's actions [the officers] would not have been injured." The State used the "but for" language in that context at least five times during its closing argument and rebuttal. The record reflects, however, that the State also repeatedly argued the proper standard which was stated in the instructions—that the defendant "caused" the officers to be injured by his conduct. But most often, that general reference to causation was followed by the State's interpretation of that standard as a "but for" standard—for example:

> "He says that the defendant didn't cause [the injuries]. Well, of course he did. Look at the evidence. It was but for his actions that these officers wouldn't have been injured. But for the defendant's conduct the officers wouldn't have been harmed."

We do not sanction the prosecutor's repeated use of the "but for" causation standard in a criminal case. The general rules of proximate cause used in civil actions do not apply in criminal cases. *State v. Kirby*, 272 Kan. 1170, 1183, 39 P.3d 1 (2002).

4

And even in a civil action, the "but for" test is not compatible with a proximate cause standard. See *Lay v. Kansas Dept. of Transportation*, 23 Kan. App. 2d 211, 217, 928 P.2d 920 (1996) (finding the "but for" theory of causality incompatible with a proximate cause analysis, citing *Jefferson v. Clark*, 190 Kan. 520, 376 P.2d 923 [1962]). Proximate causation refers to "a requirement that there be more than a mere chain of sequential events, one leading to another and then to another, in which the last one wouldn't have happened 'but for' each of the preceding events." *Drew v. State*, No. 113,055, 2016 WL 5867233, at *8 (Kan. App. 2016) (unpublished opinion), *rev. denied* __ Kan. __ (July 31, 2017). See *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008) (Proximate cause of an injury is defined as "the cause that in a natural and continuous sequence, unbroken by any superseding cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequence of the wrongful act.").

Whether the State's argument falls within the wide latitude afforded prosecutors presents a very close call but one we need not decide. Even assuming, without deciding, that the State's comments were erroneous, we find the State has met its burden to show any error to be harmless. "The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry." *Sherman*, 305 Kan. at 111. Because any error here relates to causation, we focus on that legal standard.

The district court properly instructed the jury on the controlling causation standard, explaining:  To be guilty of battery against a law enforcement officer, the State must prove the defendant knowingly or recklessly "caused bodily harm to [the victim]" or "knowingly caused physical contact with [the victim] in a rude, insulting or angry manner." See PIK Crim. 4th 54.320 (2016 Supp.). The jury consisted of laypersons who presumably do not know the difference between the "but for" causation argued by the State and the proximate cause stated in the instructions. They were properly instructed

5

that they needed to find the defendant "caused" the harm to the officers. Williams does not show that he requested a jury instruction on intervening events or that such an instruction would even have been proper. Cf. *State v. LaMae*, 268 Kan. 544, 555, 998 P.2d 106 (2000) (finding that only an extraordinary intervening cause—one that was the sole cause of the death—would break the causal chain in a felony murder case).

We are unpersuaded by Williams' contention that the jury might have convicted him on a mere negligence standard because of the State's misstatements. The jury was repeatedly instructed that to convict, they had to find Williams "knowingly or recklessly caused bodily harm" or "knowingly caused physical contact" or "knowingly obstructed, resisted or opposed [the officer]." The jury instructions repeatedly defined the terms "knowingly" and "recklessly." The instructions, viewed as a whole, lend no support to Williams' theory.

Having reviewed the facts of record, we do not agree that without the State's misstatements a reasonable jury could have found the officers' use of force to subdue Williams constituted an intervening cause of their injuries such that they caused their own injuries. The facts show that upon learning that his girlfriend was going to be arrested, Williams became upset and chose to resist the officers. His doing so caused their injuries. We find no reasonable possibility that any prosecutorial error contributed to the verdict.

*Did the district court erroneously classify Williams' previous attempted burglary conviction as a person felony?*

We next address Williams' contention that the district court erred when it used his 1999 attempted burglary conviction from Nevada to elevate his criminal history score. Williams contends that his Nevada conviction for attempted burglary is not comparable to burglary in Kansas and cannot be classified as a person felony because Kansas'

6

burglary statute has an intent requirement not present in Nevada's statute, and because Kansas law requires the building entered to be a "dwelling" while Nevada law did not.

The State agrees that Williams' Nevada attempted burglary conviction should not have been scored as a person felony because the Nevada statute did not require entry into a dwelling to complete the crime of burglary. Accordingly, we have no need to independently determine this issue. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (arguments not briefed on appeal are deemed waived and abandoned). Williams' criminal history was improperly classified so we will remand for resentencing. On remand, the district court shall recalculate Williams' criminal history by scoring this attempted burglary as a nonperson felony instead of as a person felony.

*Did the district court miscalculate Williams' criminal history score by aggregating out-of-state person misdemeanors into two person felonies?*

Williams next contends that the district court miscalculated his criminal history score by improperly aggregating several out-of-state misdemeanors.

Under the KSGA, "[e]very three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes." K.S.A. 2013 Supp. 21-6811(a). The district court aggregated six of Williams' previous convictions into two person felonies. Four of these were from other states. Williams contends his four out-of-state misdemeanor convictions should not have been classified as person crimes to enhance his criminal history score because none of them is comparable to Kansas crimes. Those out-of-state convictions are: (1) a 1998 Nevada conviction for conspiracy to commit home invasion; (2) a 2002 California conviction for battery of a spouse; (3) a 2003 Nevada conviction for battery; and (4) a 2009 Nevada conviction for domestic battery.

7

Classification of a prior crime as a person or nonperson offense is a question of law over which appellate courts exercise unlimited review. *State v. Collier*, 306 Kan. 521, Syl. ¶ 3, 394 P.3d 1164 (2017). "[T]he classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed." *State v. Keel*, 302 Kan. 560, 590, 357 P.3d 251 (2015). If an out-of-state crime is comparable to a Kansas person crime, the out-of-state crime is also classified as a person crime. See K.S.A. 2016 Supp. 21-6811(e)(3).

The language of an out-of-state criminal statute need not be identical to the language of a Kansas criminal statute for the crimes to be comparable. *State v. Rodriguez*, 305 Kan. 1139, 1151, 390 P.3d 903 (2017); *State v. Wimbley*, No. 113,889, 2017 WL 2537237, at *1 (Kan. 2017) (unpublished opinion). See *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003) (holding closest Kansas "approximation" to out-of-state statute under which conviction arose was comparable offense for classification purposes, rejecting argument that elements must be identical, and noting "[f]or purposes of determining criminal history, the offenses need only be comparable, not identical"), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). To be comparable, the out-of-state offense must be similar to the Kansas offense and govern similar criminal conduct. *State v. Riolo*, 50 Kan. App. 2d 351, 353, 330 P.3d 1120 (2014), *rev. denied* 302 Kan. 1019 (2015).

*1998 Nevada Conspiracy to Commit Home Invasion*

Williams' criminal history shows a 1998 Nevada misdemeanor conviction for conspiracy to commit invasion of the home, which the district court scored as a person offense.

8

At the time of Williams' conviction, Nevada defined invasion of the home as: "A person who, by day or night, forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry." Nev. Rev. Stat. § 205.067(1). Kansas statutes do not include the crime of "invasion of the home." The State contends that the Kansas crime of burglary is the most comparable crime to Nevada's conspiracy to commit home invasion, while Williams contends that the Kansas crime of criminal trespass is the most comparable.

In 2014, when Williams committed his current crimes, Kansas defined the person offense of burglary as: "[W]ithout authority, entering into or remaining within any: (1) Dwelling, with intent to commit a felony, theft or sexually motivated crime therein." K.S.A. 2013 Supp. 21-5807(a)(1). See K.S.A. 2013 Supp. 21-5807(c)(1)(A) (stating burglary as so defined is a severity level 7 person felony). This burglary statute did not contain the elements of forcible entry and entry of an inhabited dwelling which the Nevada home invasion statute required. Conversely, the Kansas burglary statute required proof of a specific intent to commit certain crimes which the Nevada home invasion statute did not require. The two statutes are thus not strikingly similar.

Criminal trespass, in contrast, is a nonperson offense. As Kansas statutes provided in 2014:

"(a) Criminal trespass is entering or remaining upon or in any:

"(1) Land, nonnavigable body of water, structure, vehicle, aircraft or watercraft by a person who knows such person is not authorized or privileged to do so, and:

"(A) Such person enters or remains therein in defiance of an order not to enter or to leave such premises or property personally communicated to such person by the owner thereof or other authorized person;

"(B) such premises or property are posted as provided in K.S.A. 32-1013, and amendments thereto, or in any other manner reasonably likely to come to the attention of intruders, or are locked or fenced or otherwise enclosed, or shut or secured against passage or entry; or

9

"(C) such person enters or remains therein in defiance of a restraining order issued pursuant to K.S.A. 60-3105, 60-3106, 60-3107, 60-31a05 or 60-31a06 or K.S.A. 2013 Supp. 23-2707, 38-2243, 38-2244 or 38-2255, and amendments thereto, and the restraining order has been personally served upon the person so restrained; or

"(2) public or private land or structure in a manner that interferes with access to or from any health care facility by a person who knows such person is not authorized or privileged to do so and such person enters or remains thereon or therein in defiance of an order not to enter or to leave such land or structure personally communicated to such person by the owner of the health care facility or other authorized person.

"(b) Criminal trespass is a class B nonperson misdemeanor." K.S.A. 2013 Supp. 21-5808.

This trespass statute lacked the elements of forcible entry and entry of an inhabited dwelling which the Nevada home invasion statute required. Conversely, the Kansas trespass statute required some elements not included in the Nevada home invasion statute—that the trespasser know he or she lacks authority or privilege to enter/remain, and that the trespasser enter or remain in defiance of an order to leave, or that the premises/property is posted in a certain manner, or that the trespasser enters/remains in defiance of a restraining order. Criminal trespass in Kansas thus required proof of actual or constructive notice not to enter the property. *State v. Morris*, 255 Kan. 964, 989, 880 P.2d 1244 (1994); *State v. Rush*, 255 Kan. 672, 678, 877 P.2d 386 (1994). The Nevada home invasion statute did not, but the statutes are otherwise similar.

Burglary and criminal trespass both involve entering into or remaining in structures without authority.

"'The crimes of burglary and criminal trespass are, of course, closely related. This relationship was discussed in [*State v.*] *Williams* [, 220 Kan. 610, 556 P.2d 184 (1976),] as follows:

"'In the Kansas criminal trespass statute the properties sought to be protected are land, structures, vehicles, aircraft or watercraft. Except for land these are some of the same properties named in the Kansas

10

burglary statute. Both statutes relate to a knowing and unauthorized entry or remaining within the properties. However, the burglary statute has for its purpose the protection of the property and the occupants from a felony or theft therein, while the trespass statute has for its purpose merely a restriction against the unauthorized entry or remaining within the property.' 220 Kan. at 613-14, 556 P.2d 184." *State v. Garcia*, 243 Kan. 662, 672, 763 P.2d 585 (1988), *disapproved of on other grounds by State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992).

Our task is not, of course, to determine whether some Kansas crime is a lesser included offense of the out-of-state crime. Instead, our task is to determine whether Williams' Nevada invasion of the home offense was a person offense or a nonperson offense under the comparable Kansas statute at the time of his current crimes.

Williams was not convicted of home invasion, which is a felony under Nevada law, but of conspiracy to commit home invasion, a misdemeanor. See Nev. Rev. Stat. § 199.480; Nev. Rev. Stat. § 205.067. Under Kansas law, for purposes of criminal history, "[a] prior felony conviction of . . . a conspiracy . . . as provided in K.S.A. 2013 Supp. 21-3302 . . . to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime." K.S.A. 2013 Supp. 21-6811(g). That language was meant to clarify that a conspiracy to commit a person crime is also a person crime for criminal history purposes. *State v. Dawson*, No, 113,233, 2016 WL 2772864, at *4 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. __ (April 26, 2017). But the statutory language of K.S.A. 2013 Supp. 21-6811(g) includes only prior felony convictions and thus does not extend to Williams' prior misdemeanor conviction of a conspiracy. Even if we were to assume that a misdemeanor conspiracy to commit a person crime is also a person crime for purposes of aggregating misdemeanor crimes, nothing shows us that Nevada has designated the underlying crime of conspiracy to commit home invasion as a person crime.

11

Viewing the elements and the purposes of the statutes as a whole, we find the Kansas crime of criminal trespass to be most comparable, although not identical, to the Nevada crime of conspiracy to commit invasion of the home. Those two statutes share the same purpose of restricting against the unauthorized entry or remaining within the property and govern similar criminal conduct. Accordingly, Williams' 1998 Nevada misdemeanor conviction for conspiracy to commit home invasion should have been counted as a nonperson misdemeanor. The district court thus erred in counting this conviction as a person misdemeanor and aggregating it into a felony.

*2002 California Battery of a Spouse*

We next examine Williams' 2002 California conviction for battery of a spouse. Williams contends the district court erred in scoring this as a person offense.

That crime was defined as "any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. In California, the punishment for battering a "spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship" was potential imprisonment, a potential fine or both. Cal. Penal Code § 243(e)(1). California also required the batterer to complete a batterer's treatment program as a condition of probation. Cal. Penal Code § 243(e)(1).

Kansas defines domestic battery as:  "(1) Knowingly or recklessly causing bodily harm by a family or household member against a family or household member; (2) or knowingly causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner." K.S.A. 2013 Supp. 21-5414(a). Similar to the California statute at issue, the Kansas domestic battery statute provides for punishment by both imprisonment and a fine. K.S.A. 2013 Supp. 21-

12

5414(b). The Kansas statute also gives the district court discretion to order an assessment by a certified batterer intervention program as a condition of probation. K.S.A. 2013 Supp. 21-5414(b).

We agree that the California and the Kansas offenses cover similar conduct because both statutes criminalize the act of causing harmful or offensive contact to a closely related individual. Under California law, unlawful use of force or violence means any harmful or offensive physical contact, even if such contact is slight and the only injury is to the feelings of the victim. See *James v. State*, 229 Cal. App. 4th 130, 137-38, 176 Cal. Rptr. 3d 806 (2014). Similarly, the Kansas battery statutes have been construed to criminalize harmful or offensive physical contact. *State v. Crocker*, No. 114,805, 2017 WL 2001610, at *7 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* June 12, 2017. The California battery statute which requires willful conduct is comparable to the Kansas battery statute which requires a person to act recklessly or knowingly because a person who acts willfully also acts knowingly for purposes of general criminal intent. *State v. Lassley*, 218 Kan. 752, 756, 545 P.2d 379 (1976).

Both statutes punish battery of a family member in the same manner. The district court did not need to make factual findings to conclude that Williams' California conviction for battery of a spouse was comparable to domestic battery in Kansas. Therefore, the district court properly classified Williams' California battery conviction as a person misdemeanor.

*2003 Nevada Battery and 2009 Nevada Domestic Battery*

Williams also challenges the district court's scoring of his 2003 Nevada battery and his 2009 Nevada domestic battery convictions as person offenses.

13

Nevada defined battery as "any willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. § 200.481(a) (2003). In 1925, the Nevada legislature adopted the California battery statute, and the Nevada courts have considered California precedent when determining what conduct satisfies the elements of battery. See *Hobbs v. State*, 127 Nev. 234, 237-40, 251 P.3d 177 (2011). After considering California precedent, the Nevada Supreme Court held that harmless but offensive force satisfies the unlawful use of force or violence element of the Nevada battery statute. *Hobbs*, 127 Nev. at 237-40 (intentionally spitting on another was sufficient to satisfy the use of force or violence battery element).

Nevada's statutory scheme sets forth the elements of battery and then further classifies the crime if the victim has a close relationship with the batterer. Nev. Rev. Stat. § 33.018(1)(a). The crimes of battery and domestic battery in Nevada are comparable to the analogous Kansas crimes for the same reasons the California battery is comparable. In Kansas, the crimes of battery and domestic battery are crimes against persons. K.S.A. 2013 Supp. 21-5413(g)(1); K.S.A. 2013 Supp. 21-5414(b)(1). Therefore, the district court properly classified Williams' prior Nevada misdemeanor convictions for battery and domestic battery as person misdemeanors.

*Did the district court err by granting Williams' motion for departure?*

We now address the State's appeal. The State alleges solely that the district court abused its discretion by granting Williams' motion for a downward dispositional departure because no substantial and compelling reasons justified a deviation from the presumptive sentence. Instead of articulating any such reasons, the district court stated only that Williams "deserved a chance."

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012). The test for

14

mootness is whether "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.' [Citations omitted.]" *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014). That test is met here.

Because the district court erred in calculating Williams' criminal history score, we must remand the case to the district court to resentence Williams by using the correct criminal history score. The change in Williams' criminal history score could affect the district court's decision whether to grant a dispositional departure when Williams is resentenced. Therefore, our decision about whether the district court abused its discretion in Williams' previous sentencing would serve no purpose. Nonetheless, we encourage the district court to clearly state its reasons for whatever decision it reaches on remand.

We affirm Williams' conviction, vacate his sentence, and remand for resentencing with directions to count Williams' 1999 Nevada conviction for attempted burglary as a nonperson felony and to count Williams' 1998 Nevada conviction for conspiracy to commit home invasion as a nonperson misdemeanor.