No. 41,819

STATE OF KANSAS, *Appellee*, v. WALTER P. SMITH, *Appellant*.

(353 P. 2d 510)

Opinion filed July 2, 1960.

*Rex A. Lafferty,* of Fredonia, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Cliff W. Ratner, Edmund R. Learned, James R. Barr, Frank W. Hylton* and *R. R. Barnes,* all of Wichita, were with him on the briefs for the appellant.

*Donald Vosburgh,* as county attorney, argued the cause, and *John Anderson, Jr.,* attorney general, and *Robert E. Hoffman,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: In the district court, the appellant was charged in an information in four counts with feloniously accosting, enticing or forcing a child under the age of twelve years to commit an immoral act in violation of the provisions of Section 1, Chap. 258, Laws of 1957 (G. S. 1957 Supp. 38-711). He was found guilty by a jury on three counts of the information, the trial court overruled a motion for a new trial, and sentenced defendant as provided by the statute, the sentence on each count to run consecutively. From this sentence defendant appeals.

It would appear from the record in this case, that the defendant at some time prior to the trial had agreed to submit to a test by a polygraph machine or lie detector. Some mention of this fact came to the attention of the jury, and the sole question in the present appeal turns upon whether the defendant had a fair trial due to this fact.

The question is one of importance and the argument of the defendant has been carefully considered.

At the trial, the state first introduced the testimony of the four little girls as to the alleged acts of the defendant. The state then called as a witness the mother of one of the girls and after some preliminary questions the following took place:

"Q. Have you ever had any conversation with the defendant?

"A. Yes.

"Q. State when and where this was.

"A. It was in his shop over there. It was about two weeks after I found out about my daughter.

"Q. Will you state what you said in this conversation and what Mr. Smith said.

"A. I went in there, and I was mad enough, I believe I could have clawed his eyes out if he did not admit the truth to me, and I started in on him, and said quite a few things; I asked him—

"Mr. Lafferty: *Say what the witness said.*

"The Court: State what you said and what he said.

"A. I asked him if it is true what Ann has told me about what he did to

her and these other girls, and he said 'Yes,' but I never would have known if he had not submitted to the lie detector—

"Mr. Lafferty: We object to voluntary statement of the witness and ask that it be stricken from the record.

"The Court: That part of the testimony with reference to lie detector may be stricken from the record and the jury is admonished not to consider that as part of the testimony.

"Mr. Vosburgh: This is voluntary testimony of the witness.

"The Court: I have admonished the jury not to consider it."

Following the admonition of the court set out above, the witness completed her testimony concerning the claimed admission of the defendant without further reference to the lie-detector test.

The state then called as a witness W. F. Cowan. Before this witness had more than stated his name and that he lived in Topeka, the counsel for defendant secured permission of the court to excuse the jury so that the witness might be pre-examined before the court alone. The abstract and counter abstract contain a record of the pre-examination. It is shown that Cowan was the expert who had conducted the lie-detector test upon the defendant. All parties were fully cognizant of the decision of this court in *State v. Lowry,* 163 Kan. 622, 185 P. 2d 147, holding lie detector tests to be incompetent evidence. The county attorney seems to have been contending that it would be competent to show that after the test was completed, witness Cowan left the room and called defendant's counsel, who then came into the room, and that at that time the witness and defendant had some conversation in the presence of his counsel. Defendant through his counsel objected to this testimony on the ground it was "part and parcel" of the lie-detector test. The state seemed to maintain that the test was completed and that the conversation was admissible under a paragraph of the opinion in *State v. Lowry,* supra, found on page 628. The court sustained defendant's objections and refused to hear the conversation even in the absence of the jury. Cowan gave no further testimony at the trial.

To continue further with the matters objected to on this appeal, it may be said that defendant took the witness stand in his own behalf. He denied any suggestion of guilt whatsoever. On cross-examination, he denied making the admission testified to by the mother of one of the girls, *supra.*

Defendant was further cross-examined as to admissions made to Wendell F. Cowan. The counsel for the defense lodged a number

of objections most of which were sustained. Finally, defendant was told to answer the question: "What did you say to Mr. Cowan?" Defendant replied, in effect, that he could not remember any particular thing. Counsel said he would refresh defendant's recollection, and asked if defendant had not admitted molesting one of the girls (stating her name). The answer was, "I did not."

Counsel for defendant again objected, and the court remarked:

"I made my ruling on the lie-detector test . . . Objection is sustained. Anything competent you have the right to ask, but you cannot bring in something the court ruled incompetent."

The only other matter now complained of by the defendant is that the same mother who testified as to the admission by defendant in the state's case in chief was recalled on rebuttal. She again stated that defendant made the admission, and that she was "not supposed to say the other" part of what defendant said. All of this was promptly stricken from the record by order of the court as not being rebuttal testimony.

From the above rather complete account of the matters complained of in this appeal, it must be observed that almost all of the matters objected to by defendant were stricken out by the trial judge, who gave every indication of trying to be absolutely fair. It must be observed also that at no time did defendant, during the course of the trial, ask the court to declare a mistrial. He seems to have been content to rest his case with the jury until it brought in a verdict of guilty. We do not mean to intimate that such a motion would or should have been sustained had it been made. The evidence was ample to sustain the verdict of the jury and this matter is not raised upon appeal. The question of whether the defendant had a fair trial upon the above record was argued to the learned trial judge on motion for new trial and he overruled the motion. We have examined the authorities cited by defendant purporting to show how other courts have ruled upon intimations being made as to lie detector tests, but find that they differ radically from this case.

Regardless of the want of any error by the trial court in ruling upon objections made by the defendant at the trial, on motion for a new trial, defendant was within his rights in arguing that he had not received a fair trial. Where there has been a verdict of guilty in a criminal case, the trial judge has the duty to reconsider the issues of the case, whether raised by objection or not, to determine

the question of whether he should approve the verdict and must use his best judicial discretion in deciding that issue. This was pointed out in *State v. Miller*, 154 Kan. 267, 118 P. 2d 561. The Miller case made clear that the duty of approving such a verdict was the same as possessed by the trial court in a civil case. This court has often outlined the duty of the trial court in civil cases. Some of the former decisions discussing this rule are: *Halverson v. Blosser*, 101 Kan. 683, 168 Pac. 863, L. R. A. 1918 B, 498; *Pugh v. City of Topeka*, 151 Kan. 327, 99 P. 2d 862; *Atkinson v. Wiard*, 153 Kan. 96, 109 P. 2d 160; *Gates v. Western Casualty & Surety Co.*, 153 Kan. 469, 112 P. 2d 106; *Bateman v. Roller*, 168 Kan. 111, 211 P. 2d 440; *Fralick v. Kansas City Public Ser. Co.*, 168 Kan. 134, 211 P. 2d 443; and *Barstow v. Elmore*, 177 Kan. 30, p. 33, 276 P. 2d 360.

On appeal, the supreme court does not have the above power of the trial court. This court was not present at the trial, and to warrant reversing the order denying a new trial, we must find definite error in the record. In this appeal, the trial court approved the verdict after considering defendant's contentions. That being the case, the order denying defendant a new trial must be affirmed.

It is so ordered.