NOT DESIGNATED FOR PUBLICATION

No. 123,351

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES H. MOORE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed March 18, 2022. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., SCHROEDER, J., and JAMES L. BURGESS, S.J.

POWELL, J.: Thanks in part to shifting sentencing jurisprudence emanating from our Supreme Court, the legality of Charles H. Moore's sentence has vexed us for years. This present appeal is Moore's fourth, and he once again challenges his criminal history score, specifically the district court's classification of three of his prior convictions as person felonies. The linchpin of Moore's argument hinges upon his view that his resentencing after the Kansas Supreme Court's mandate in 2018 reset the sentencing clock, thus creating a more favorable legal playing field in which to advance his arguments—that the three prior convictions at issue were improperly scored rendering his

1

sentence illegal. However, because Moore's challenge to his criminal history score comes to us by way of a motion to correct illegal sentence, the law requires us to judge the legality of his sentence in accordance with the law as it existed at the time Moore was originally sentenced in 2005. After conducting this review, we conclude Moore's sentence as originally imposed in 2005 was a legal one. Because the district court's most recent sentence mirrors that sentence, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

As part of a plea agreement with the State, Moore pleaded guilty to one count of aggravated indecent liberties for engaging in sexual intercourse with a two-year-old girl on August 19, 2004. At sentencing on February 24, 2005, the district court found Moore's criminal history score was A and sentenced him to an enhanced sentence of 494 months' imprisonment after declaring him a persistent sex offender. Moore's 1994 Oklahoma lewd molestation conviction was scored as a person felony but was not used to calculate his criminal history score as it was used to declare him a persistent sex offender. Moore appealed his sentence on grounds other than his criminal history score, and a panel of our court dismissed the appeal for lack of jurisdiction because Moore's sentence was within the presumptive sentence range. *State v. Moore*, No. 94,309, 2006 WL 903164, at *1 (Kan. App. 2006) (unpublished opinion) (*Moore I*).

Several years later, on December 24, 2014, Moore filed a motion to correct an illegal sentence, arguing that according to *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015) (*Murdock I*), his pre-1993 out-of-state convictions had been improperly scored as person crimes, making his criminal history score incorrect and his sentence illegal. The district court summarily denied the motion, and a panel of our court affirmed. *State v. Moore*, 52 Kan. App. 2d 799, 817, 377 P.3d 1162 (2016) (*Moore II*).

2

On review, our Supreme Court held that under *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), Moore's 1984 Oregon first-degree burglary conviction should be classified as a nonperson felony. Thus, the court vacated Moore's sentence and remanded the case with directions for the district court to classify his 1984 Oregon first-degree burglary conviction as a nonperson felony and resentence him accordingly. *State v. Moore*, 307 Kan. 599, 603, 412 P.3d 965 (2018) (*Moore III*).

Consistent with our Supreme Court's mandate, on August 17, 2018, the district court recalculated Moore's criminal history score as B and imposed an enhanced sentence of 456 months in prison due to his designation as a persistent sex offender. Moore appealed again, this time arguing the district court had incorrectly included in his criminal history score his 1994 Oklahoma lewd molestation conviction because that conviction was used to declare him a persistent sex offender which allowed the district court to double his sentence. He also argued the district court had improperly ordered lifetime postrelease supervision. A panel of our court agreed but suggested the Kansas Supreme Court's holding in *Moore III* classifying Moore's 1984 Oregon first-degree burglary conviction as a nonperson felony was no longer good law. The panel vacated Moore's sentence and remanded the case for a redetermination of his criminal history score. *State v. Moore*, No. 120,132, 2019 WL 6223782, at *2-3 (Kan. App. 2019) (unpublished opinion) (*Moore IV*).

A new presentence investigation (PSI) report was prepared, and it calculated Moore had a criminal history score of A. In particular, the PSI report classified a 1969 juvenile adjudication as a person felony and rescored his 1984 Oregon first-degree burglary conviction as a person felony. At sentencing on October 9, 2020, Moore objected to the PSI report, but the district court rejected Moore's challenges, found him to have a criminal history score of A, and sentenced Moore to 494 months' imprisonment with 36 months of postrelease supervision.

Moore once again appeals.

## IS MOORE'S SENTENCE ILLEGAL?

Moore argues the district court erred when it classified three of his prior convictions as person felonies. First, Moore argues the district court did not follow the mandate from *Moore III* when it classified his 1984 Oregon first-degree burglary conviction as a person crime. Second, Moore asserts the State did not prove his 1969 Kansas juvenile adjudication was a valid crime or that a comparable Kansas person felony offense existed to allow it to be scored as a person crime. Third, Moore alleges the district court erred in classifying his 1994 Oklahoma lewd molestation conviction as a person crime because there was no comparable Kansas person offense. Moore does not challenge one other person felony in his criminal history, a 1986 Oregon first-degree sexual abuse conviction.

A.    *Standard of Review*

The legality of a sentence is a legal question over which we exercise de novo review. Our examination of the legality of Moore's sentence requires us to determine the accuracy of his criminal history score, and the calculation of Moore's criminal history score depends upon the proper scoring of the prior convictions listed in Moore's criminal history. Such an analysis involves interpreting the revised Kansas Sentencing Guidelines Act, K.S.A. 2020 Supp. 21-6801 et seq. (KSGA), and other statutes, which is a legal question we also review de novo. *State v. Clark*, 313 Kan. 556, 572, 486 P.3d 591 (2021) (*Clark III*).

4

B.      *Sentencing Rules*

To give Moore's arguments on appeal some context, we take a moment to review the relevant sentencing rules. Under the KSGA, an offender's sentence is based upon the severity level of the crime committed and the offender's criminal history score. K.S.A. 2020 Supp. 21-6804(c). An offender's criminal history score is tabulated by scoring each of the prior convictions contained in the offender's criminal history. See K.S.A. 2020 Supp. 21-6803(c), (d). Each prior conviction or juvenile adjudication is scored as either a felony or misdemeanor and as either a person or nonperson crime. K.S.A. 2020 Supp. 21-6810(a). Generally speaking, a crime is a person offense "if the crime inflicted or could inflict physical or emotional harm to another." *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251 (2015). Nonperson offenses are "crimes that inflicted or could inflict damage to property . . . ." 302 Kan. at 575. Usually, "person crimes are weighted more heavily than nonperson crimes in determining an offender's criminal history score." 302 Kan. at 575.

When designating a pre-KSGA Kansas conviction as either a person or nonperson crime—prior to July 1, 1993, crimes were not designated as person or nonperson—the sentencing court is to determine the appropriate classification based upon the comparable Kansas offense in effect at the time the current crime of conviction was committed. 302 Kan. at 581. The same rule is applied to prior out-of-state convictions. If no comparable Kansas offense exists for such a prior conviction, then the prior conviction must be scored as a nonperson crime. K.S.A. 2020 Supp. 21-6811(e)(3); *Keel*, 302 Kan. at 581.

An offender's criminal history is scaled from A to I, with A being the most extensive and I being the least. A criminal history score of A reflects that an offender has been convicted of three or more prior person felonies. A criminal history score of I means the offender has no criminal history or has been convicted of only one prior misdemeanor. K.S.A. 2020 Supp. 21-6809.

5

Before an offender is sentenced, a PSI report is prepared by a court services officer who tabulates the offender's prior convictions or adjudications and scores each prior conviction or adjudication to calculate a criminal history score. Then, the offender's presumptive sentence is determined by applying the appropriate sentencing guidelines grid box corresponding to the severity level of the crime committed and the offender's criminal history score. K.S.A. 2020 Supp. 21-6813(a), (b). A copy of the PSI report is provided to the offender, who must object to any inaccuracies in writing prior to sentencing. If this happens, the State has the burden to prove the disputed portion of the offender's criminal history by a preponderance of the evidence. K.S.A. 2020 Supp. 21-6814(c). Otherwise, the offender shall admit to the criminal history in open court at the sentencing hearing. K.S.A. 2020 Supp. 21-6814(a). Submission of the PSI report to the sentencing court without objection satisfies the State's burden of proof concerning an offender's criminal history. K.S.A. 2020 Supp. 21-6814(b). If an offender challenges his or her criminal history for the first time on appeal or in a collateral proceeding such as in a motion to correct illegal sentence, then the burden to prove an offender's criminal history rests with the offender. See *State v. Roberts*, 314 Kan. 316, 334-35, 498 P.3d 725 (2021) (once criminal history established, offender bears burden to prove criminal history in collateral proceeding); *State v. England*, 45 Kan. App. 2d 33, 40, 245 P.3d 1076 (2010) (same).

An offender may challenge the legality of his or her sentence at any time, including for the first time on appeal. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015); see K.S.A. 2020 Supp. 22-3504(a). The legality of an offender's sentence is determined according to the law in effect at the time of the original sentencing, although a party is entitled to the benefit of any changes in the law before the sentence becomes final. See *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019) (*Murdock II*) ("The legality of a sentence is fixed at a discrete moment in time."). Put another way, "a party may seek and obtain the benefit of a change in the law during the pendency of a direct

appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced." 309 Kan. at 591-92.

With these sentencing rules in mind, we turn to Moore's arguments.

C.     *Moore's Sentence Judged According to the Law in 2005*

Moore centers his challenge on whether the district court should have classified his three disputed prior convictions as person crimes. Moore claims they should be scored as nonperson crimes. If Moore is correct, that would have the effect of reducing his criminal history score, making his sentence illegal. The linchpin of Moore's argument is that the law in effect at the time of his *resentencing* should control. Moore argues he had no sentence after the appellate courts vacated his sentences in *Moore III* and *Moore IV*, until he was resentenced in 2020. He argues his appeal is a direct appeal, meaning he is entitled to the benefit of any change in the law. Moore relies on *Wetrich*, which was decided in 2018 before his resentencing, to support his arguments. In *Wetrich*, our Supreme Court held that for an out-of-state conviction to be comparable to a Kansas offense, "the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. . . . [T]he elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime . . . ." 307 Kan. at 562. This more restrictive definition of the term comparable favors Moore.

In contrast, the State argues that because Moore's challenge to his criminal history score comes in a motion to correct an illegal sentence, the law in effect at the time of Moore's original sentencing in 2005 controls. Any changes to the law occurring after that time—such as the Kansas Supreme Court's "identical to, or narrower than" definition of comparable in *Wetrich*—cannot benefit Moore. In 2005, to determine whether a Kansas offense was comparable, the sentencing court was to look to the most comparable Kansas offense by determining what Kansas offense was the "closest approximation" to the out-

7

of-state conviction. *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), *overruled in part on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1018 (2015). Importantly, the Kansas offense need only be "comparable, not identical" to the prior out-of-state conviction. *Vandevort*, 276 Kan. at 179. This broader definition of comparable favors the State.

It is clear the parties' different arguments are based off their use of different sentencing dates, so which law is applicable in this appeal turns on whether the law from 2005 or 2020 applies. See *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019).

In *State v. Clark*, No. 119,076, 2019 WL 1746772 (Kan. App. 2019) (unpublished opinion) (*Clark I*), Clark was initially sentenced in 2005. Clark appealed, claiming his sentence was illegal. A panel of our court agreed and remanded for resentencing. *Clark I*, 2019 WL 1746772, at *6. The district court resentenced Clark, applying the law as it existed at the time of his resentencing in 2019. The State then appealed, claiming Clark's sentence was illegal. A second panel of our court held the district court incorrectly calculated Clark's criminal history score because the applicable law was the law as it existed at the time of Clark's original sentencing in 2005. *State v. Clark*, No. 121,789, 2020 WL 1903820, at *5 (Kan. App. 2020) (unpublished opinion) (*Clark II*). Clark sought review by the Kansas Supreme Court, arguing this was an error because his sentence had been vacated by the panel in a prior appeal. Our Supreme Court held the law in effect on the date of Clark's original sentence controlled when determining the legality of Clark's sentence. *Clark III*, 313 Kan. at 572. The Supreme Court based this on the rationale that

> "this case arose from Clark's 2017 motion to correct his 2005 sentence. Clark's resentencing in 2019 only occurred because *Clark I* held his 2005 sentence was illegal—a holding that became erroneous as a result of decisions we issued prior to Clark's

8

resentencing in 2019. Thus, if Clark's sentence was lawful in 2005, he should have never been resentenced in 2019." 313 Kan. at 572-73.

As the *Clark III* court noted:  "*Murdock II* confirms '[t]he legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced.'" *Clark III*, 313 Kan. at 573. Because Clark's sentence was fixed at his sentence's pronouncement in 2005, the legality of his sentence should be determined under the law as it then existed. The Supreme Court determined *Vandervort* applied rather than *Wetrich*'s "'identical or narrower'" test. *Clark III*, 313 Kan. at 573.

*Clark III* controls here. Moore's resentencings in 2018 and 2020 notwithstanding, because Moore's challenge to his sentence arises under his motion to correct illegal sentence, the legality of Moore's sentence which was pronounced in 2005 must be determined in accordance with the law as it existed at that time. See *Clark III*, 313 Kan. at 572-73. Because *Wetrich* was not decided until 2018, well after Moore's sentence was final, *Vandervort*'s more expansive definition of comparable controls. Thus, the determination of whether Moore's three prior felony convictions should be classified as person or nonperson crimes must be examined under the *Vandervort* standard.

D.      *Moore's Constitutional Challenge to His Sentence Not Available*

Before we address Moore's specific sentencing challenges, we also address Moore's constitutional argument for *Wetrich*'s application. According to Moore, use of the *Wetrich* standard is required under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (any fact used to enhance a defendant's maximum sentence must be proven to a jury), because using any other test would amount to improper judicial fact-finding. The essence of this argument is that any application of a rule other than *Wetrich* would render Moore's sentence unconstitutional. See *Clark III*, 313 Kan. at 578. But, as we have noted, this appeal originates from a motion to correct an

illegal sentence. K.S.A. 2020 Supp. 22-3504 excludes claims a sentence is illegal because it violates a constitutional provision. Thus, to the extent Moore's argument is based on an *Apprendi* challenge under the Sixth Amendment to the United States Constitution, it cannot be brought as part of an illegal sentence challenge. See *Clark III*, 313 Kan. at 578.

But even if this claim could be brought in a motion to correct an illegal sentence, it still lacks merit. In *Clark III*, Clark argued that "*Wetrich*'s interpretation of the term 'comparable' is the only constitutional interpretation of K.S.A. 2000 Supp. 21-4711(e) (later codified as K.S.A. 21-6811[e])" under *Apprendi*, the effect of which would "make *Wetrich*'s identical-or-narrower rule operative from 2000, the year *Apprendi* was issued." *Clark III*, 313 Kan. at 577. The Kansas Supreme Court rejected this argument, noting:

> "*Vandervort* was decided three years after *Apprendi*. Furthermore, before *Wetrich*, no other Kansas case construed 'comparable' as encompassing the identical-or-narrower requirement. Thus, *Wetrich*, not *Apprendi*, created the new construction of the term 'comparable' . . . . And because *Wetrich* was a change in the law, it cannot render Clark's 2005 sentence illegal at the time of pronouncement." *Clark III*, 313 Kan. at 577-78.

The same is true here.

Parenthetically, we also note that *Wetrich*'s identical or narrower test for comparability is based upon a statutory construction of the KSGA, not any constitutional mandate. See *Wetrich*, 307 Kan. at 558-59; see also *State v. Gales*, 312 Kan. 475, 484, 476 P.3d 412 (2020) (*Vandervort* comparability test impliedly describes elements-based comparison).

10

E.	*Moore's 1984 Oregon First-degree Burglary Conviction Properly Classified as a Person Felony*

Moore first argues the district court erred in classifying his 1984 Oregon first-degree burglary conviction as a person felony. Moore argues the district court had to comply with our Supreme Court's mandate in *Moore III* and apply *Wetrich*'s identical-or-narrower elements test to classify the Oregon conviction as a nonperson felony. The State counters the district court was correct to recognize *Moore III* was no longer good law and apply *Vandervort* to classify the Oregon conviction as a person felony. We agree with the State.

The proper classification of Moore's 1984 Oregon first-degree burglary conviction has been at issue in every appeal concerning Moore's illegal sentence challenge. After his 2014 motion to correct his illegal sentence, the Kansas Supreme Court vacated his sentence, holding his first-degree burglary conviction had no comparable Kansas offense under *Wetrich*'s identical-or-narrower test. *Moore III*, 307 Kan. at 602-03. Moore was resentenced in 2018, and the district court classified his Oregon first-degree burglary conviction as a nonperson felony in accordance with the mandate. Nevertheless, Moore again appealed his sentence, arguing his sentence was still illegal, albeit on other grounds. But a panel of our court hearing this appeal noted: "Because Moore's crime was committed in 2004 and his sentence became final in 2005, it appears our Supreme Court may now treat the prior 1984 Oregon [first-degree] burglary differently than it previously would have." *Moore IV*, 2019 WL 6223782, at *2. Accordingly, the panel once again vacated Moore's sentence and remanded the case for resentencing because Moore's criminal history was unclear. 2019 WL 6223782, at *2. At Moore's 2020 resentencing, the district court acknowledged that the change in the law in *Wetrich* did not apply retroactively, and Moore's 1984 Oregon first-degree burglary conviction was once again classified as a person felony. That prompted Moore's present appeal. This time, Moore

11

argues the district court violated *Moore III*'s mandate by classifying his Oregon first-degree burglary conviction as a person offense.

As we have noted, a sentence that is legal when imposed does not later become illegal if the law changes. The legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time of the sentence's pronouncement—it is fixed at that discrete moment in time. Neither party may avail itself of later changes in the law once the sentence is final. *Murdock II*, 309 Kan. at 591. "[A] party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced." 309 Kan. at 592.

However, our Supreme Court has noted that, sometimes, later developments in the law might undermine an earlier merits determination of the legality of a sentence. While true changes in the law cannot transform a once legal sentence into an illegal one, later developments in the law might reveal whether the original sentence was indeed legal when it was pronounced. In the latter case, a party may file a successive motion to correct an illegal sentence based on developments in the law showing the earlier determination was wrong on the merits. 309 Kan. at 592.

*Wetrich* was a change in the law. *Weber*, 309 Kan. at 1209. According to our Supreme Court, *Moore III*'s holding, which applied *Wetrich*'s identical or narrower standard retroactively to Moore's 2005 sentence, is no longer good law. See *Murdock II*, 309 Kan. at 592; *Weber*, 309 Kan. at 1209. The correct test in *Moore III* should have been *Vandervort*'s closest approximation test. See 276 Kan. at 179. Application of the *Vandervort* test requires the sentencing court to look to the statutory elements of the out-of-state crime and the closest Kansas crime. *Gales*, 312 Kan. at 484.

Moore was convicted of first-degree burglary of a dwelling in Oregon in 1984. In 1984, Oregon defined first-degree burglary of a dwelling as violating Or. Rev. Stat.

§ 164.215 (1983) (second-degree burglary) and the building is a dwelling. Or. Rev. Stat. § 164.225(1) (1983). Or. Rev. Stat. § 164.215(1) (1983) defines second-degree burglary as "enter[ing] or remain[ing] unlawfully in a building with intent to commit a crime therein." So in 1984, first-degree burglary in Oregon required an offender to enter or remain in a dwelling with the intent to commit a crime within that dwelling.

A dwelling is "a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present." Or. Rev. Stat. § 164.205(2) (1983). Intermittent is defined as "'coming and going at intervals' or 'not continuous.'" *State v. McDonald*, 77 Or. App. 267, 272, 712 P.2d 163 (1986). In Oregon, the purpose of criminalizing burglary is to "'[protect] against invasion of premises likely to terrorize occupants,'" and, where a building is irregularly occupied at night, "the likelihood of terrorizing sleeping occupants exists." 77 Or. App. at 273.

The closest approximation in Kansas law is burglary as defined by K.S.A. 21-3715(a): "Burglary is knowingly and without authority entering into or remaining within any: (a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein." Under Kansas law, a dwelling is "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 2004 Supp. 21-3110(7). Burglary under K.S.A. 21-3715(a) is a person felony. K.S.A. 21-3715.

Both statutes require the offender to enter a dwelling unlawfully. Oregon and Kansas define dwelling similarly. In fact, Kansas' definition is likely broader, requiring only the use or an intent to use a building as a human habitation, home, or residence, unlike Oregon's requirement that the building be at least intermittently occupied. See K.S.A. 2004 Supp. 21-3110(7); Or. Rev. Stat. § 164.205(2) (1983).

13

Oregon requires the intent to commit a crime inside the dwelling; it does not specify the severity of the crime. Or. Rev. Stat. § 164.225(1) (1983). Kansas requires that the offender intend to "commit a felony, theft or sexual battery." While not a perfect equivalent between the two statutes, K.S.A. 21-3715(a)'s enumeration of theft and sexual battery in addition to felonies implies nonfelony crimes can satisfy this element of burglary. K.S.A. 21-3715(a) is the closest approximation to Or. Rev. Stat. § 164.225(1) (1983) under *Vandervort*. The district court was correct in 2020 to categorize Moore's Oregon first-degree burglary conviction as a person felony.

Admittedly, *Moore III* stands in the way of such a conclusion as its mandate directed the district court to classify Moore's 1984 Oregon first-degree burglary conviction as a nonperson felony. 307 Kan. at 603. But as our prior panel considering Moore's third appeal held, *Moore III* is no longer good law. Thus, we are faced with the question of how *Moore III*'s mandate affects Moore's current appeal.

*Clark III* is instructive. The district court denied Clark's 2017 motion to correct an illegal sentence, applying *Vandervort*. In 2019, a panel of our court issued *Clark I*, reversing the district court and applying *Wetrich*'s identical-or-narrower test. On the same day as *Clark I*, however, the Kansas Supreme Court issued *Murdock II*. *Clark III*, 313 Kan. at 571. And shortly after *Murdock II*, the Kansas Legislature's 2019 amendments to K.S.A. 22-3504 went into effect, defining a "'change in the law' as 'a statutory change or an opinion by an appellate court of the state of Kansas, unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction.'" *Clark III*, 313 Kan. at 571. The Legislature also deemed the amendments to be procedural and retroactive. 313 Kan. at 571. While the remand from *Clark I* was pending before the district court, the Kansas Supreme Court issued *Weber*, holding *Wetrich* constituted a change in the law. *Clark III*, 313 Kan. at 572.

14

As *Clark III* noted, the mandate rule is a statutory rule requiring lower courts to follow appellate court mandates. 313 Kan. at 575. The rule flows from two statutes. K.S.A. 2020 Supp. 60-2106(c) provides the mandate and accompanying appellate opinion "shall be controlling in the conduct of any further proceedings necessary in the district court." K.S.A. 20-108 provides an appellate court may require the district court to execute the appellate court's judgment "according to the command of the appellate court" made in the opinion.

In *Clark I*, the panel vacated the district court's judgment and remanded for resentencing with Clark's Oklahoma conviction classified as a nonperson felony. 2019 WL 1746772, at *6. Under the mandate, the district court had to resentence Clark with a criminal history of C. But, in *Clark II*, another panel of our court held the district court was not bound by *Clark I*'s mandate at resentencing, recognizing an exception to the mandate rule when a controlling authority issues an intervening change in the applicable law. Relying on the Supreme Court's holding that *Wetrich* was a change in the law, the *Clark II* panel concluded the district court was no longer bound by the mandate at Clark's 2019 resentencing. 2020 WL 1903820, at *4.

But our Supreme Court noted the "'intervening change in the law exception'" relied on by the panel in *Clark II* only applied to the law of the case doctrine; it was not applicable to the statutorily derived mandate rule. *Clark III*, 313 Kan. at 575-76. Thus,

> "'[w]hile different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, under Kansas law no exceptional circumstances permit a lower court to circumvent the mandate of a higher court' . . . 'even when a change in the law has occurred.' [Citations omitted.]" 313 Kan. at 576.

Recognizing the district court was placed in a difficult position of choosing between a Court of Appeals mandate and Kansas Supreme Court precedent with no clear

direction, the *Clark III* court then asked what a district court should do when an appellate court's mandate effectively requires it to impose an illegal sentence. The court answered that ideally the district court would have resentenced Clark according to the mandate and then construed the State's challenge to the sentence's legality as a motion to correct an illegal sentence. The district court then could have corrected the sentence based on *Murdock II* and *Weber*. *Clark III*, 313 Kan. at 576.

Here, rather than wait to file a motion to correct an illegal sentence after resentencing, the State filed a brief where it argued the change in the law meant *Moore III*'s mandate was no longer good law. The district court agreed and sentenced Moore to what it regarded as a legal sentence absent *Moore III*'s mandate. The district court did not comply with the mandate and impose an illegal sentence as *Clark III* instructed.

In *State v. Cheeks*, 313 Kan. 60, 482 P.3d 1129 (2021), Cheeks argued the mandate rule compelled the district court to disregard new law in *State v. LaPointe*, 309 Kan. 299, 434 P.3d 850 (2019), and apply the mandates of his prior appeals. The Kansas Supreme Court recognized that the mandates failed to account for the intervening decision and holding in *LaPointe*. The *Cheeks* court "assume[d] without deciding that the district court erred and violated the letter and spirit of the prior appellate mandates by concluding that Cheeks did not fall within the class of individuals eligible to petition for the testing contemplated in K.S.A. 21-2512, notwithstanding the intervening decision in *LaPointe*." 313 Kan. at 69. Assuming error, the Supreme Court moved to the reversibility analysis. 313 Kan. at 69.

The *Cheeks* court recognized the concept of futility when there was no reasonable possibility the district court's deviation from the mandate affected the procedures below because, if the appellate court reversed, the holding from the intervening law would obligate the district court to take the same, legally correct action. *Cheeks* also recognized the district court's dilemma between complying with the mandate and risking reversal for

16

failing to adhere to precedent or by complying with the intervening precedent and risking reversal for deviating from the mandate rule. "'In that circumstance, courts usually view reversibility in light of the futility of remanding a case following a trial court's failure to follow a mandate inconsistent with controlling precedent.' [Citation omitted.]" 313 Kan. at 70. Applying this principle, the *Cheeks* court held that, even assuming the district court's application of *LaPointe* over the prior mandates was error, the remedy would require a remand to the district court for another proceeding. But, in directing a remand, the Supreme Court would have to consider *LaPointe*. The Supreme Court held the district court's deviation from the mandates was not reversible error because the district court would be obligated to apply controlling precedent on remand. *Cheeks*, 313 Kan. at 70-71.

Assuming without deciding that the district court's classification of Moore's 1984 Oregon first-degree burglary conviction as a person felony was error because it violated *Moore III*'s mandate, our vacating of the district court's sentence and remand for another resentencing would be futile because in doing so, we would have to recognize *Murdock II*'s holding that *Wetrich* was a change in the law. At resentencing, the district court would apply *Vandervort*—as it did at the 2020 resentencing—and find the first-degree burglary conviction was a person felony. Thus, any error by the district court was harmless, and we agree with the district court's classification of Moore's 1984 Oregon first-degree felony conviction as a person offense.

F.      *Moore's 1969 Kansas Juvenile Adjudication Correctly Classified as a Person Felony*

Moore advances three arguments that his 1969 Kansas juvenile adjudication should either not be included in his criminal history or should be scored as a nonperson offense. First, Moore argues the State failed to prove his 1969 juvenile adjudication was a valid conviction because (1) it did not prove Moore had counsel or waived that right, and (2) it did not prove the offense for which he was adjudicated. Second, Moore argues there

was no comparable Kansas offense under *Wetrich* because the various ways to violate G.S. 1949, 38-711 (1961 Supp.) are too broad and there is not enough information to identify a comparable offense. Third, Moore asserts his juvenile adjudication decayed and should not have counted in his criminal history score.

The State responds that because Moore did not object to his criminal history at sentencing, it is Moore who did not meet his burden to prove he was without counsel or that there was a lack of evidence to show which statute he violated. The State also argues Moore's 1969 juvenile adjudication is comparable under *Vandervort* to indecent liberties or aggravated indecent liberties with a child or indecent solicitation or aggravated indecent solicitation of a child, all of which are person felonies. Finally, the State argues Moore's adjudication did not decay because person felonies do not decay.

1.    *Moore has waived his argument that the State did not prove his adjudication.*

Moore advances two arguments in support of his contention that the State failed to prove his 1969 juvenile adjudication should be included in his criminal history. First, Moore claims the State failed to prove he was afforded counsel or that he waived his right to counsel. Second, Moore argues there is a lack of evidence to establish this juvenile adjudication.

However, Moore did not argue at his 2005 sentencing that he was not represented by counsel for his 1969 juvenile adjudication. Moreover, before us, Moore still does not allege he was not represented by counsel but merely suggests he may not have been represented because the record does not affirmatively show representation or waiver. The problem with Moore's argument is that our Supreme Court recently rejected this argument, holding that "a defendant who fails to object under K.S.A. 2020 Supp. 21-6814(c) at sentencing to the constitutional validity of a prior conviction used to enhance a

18

current sentence, based on a claim of the absence of counsel without a valid waiver" has the burden to prove the conviction is invalid. *Roberts*, 314 Kan. at 334-35.

Moore has presented to us no evidence that he was not represented by counsel during the proceedings leading to his 1969 juvenile adjudication. He simply relies upon a bare assertion that because the State did not provide any evidence he was afforded the right to counsel for his 1969 adjudication, it could not be included in his criminal history score. But because Moore failed to raise this issue at his 2005 sentencing, he, not the State, now bears the burden to prove his lack of counsel. See 314 Kan. at 322 (absent objection at sentencing, prior convictions presumed valid).

Moore also claims there is a lack of evidence of his 1969 juvenile adjudication, again arguing the State failed to meet its burden of proof concerning his criminal history. Again, however, Moore did not object to the inclusion of his 1969 juvenile adjudication at his original sentencing in 2005. In fact, Moore stipulated to the accuracy of his criminal history, satisfying the State's burden. Because of that stipulation, Moore cannot challenge the existence of this prior adjudication. We find there is sufficient evidence in the record establishing the existence of Moore's 1969 juvenile adjudication.

2. *The elements of Moore's 1969 juvenile adjudication are comparable to a person offense.*

Moore next argues his 1969 juvenile adjudication should not have been classified as a person offense because it did not have identical or narrower elements than any Kansas person offense in existence in 2005. Moore asserts there is no evidence as to why the district court adjudicated Moore a "delinquent"—whether he satisfied the felony or misdemeanor elements of his crime. Relying on *State v. Lowden*, 38 Kan. App. 2d 858, 174 P.3d 895 (2008), Moore argues not all immoral or depraved acts constitute crimes in Kansas.

As he does throughout his argument, Moore relies on *Wetrich*'s identical-or-narrower test. But as we have already explained, *Wetrich* is not the applicable standard for his 2005 sentencing; *Vandervort* is.

According to the KSGA, all prior convictions and juvenile adjudications committed before July 1, 1993, are to be considered and scored in order to calculate an offender's criminal history score. "In order to do this, a pre-KSGA [before July 1993] conviction and/or adjudication must be classified as either a person or nonperson offense by comparing the criminal statute under which the prior offense arose to the comparable post-KSGA criminal statute." *Keel*, 302 Kan. at 581. The comparable post-KSGA statute is the one in effect when the current crime of conviction was committed. 302 Kan. at 581.

Our task, under *Vandervort*, is to find the closest approximation to Moore's 1969 juvenile adjudication in effect in 2005 and then determine whether this comparable offense is a person or nonperson crime. We do this by examining the elements of Moore's 1969 juvenile adjudication with any comparable Kansas offense. See *Gales*, 312 Kan. at 484; *Vandervort*, 276 Kan. at 179.

Moore suggests this is impossible because we cannot determine his actual offense. Admittedly, the details of Moore's 1969 adjudication are sparse, but the record helps narrow down the elements.

Moore's PSI report lists his juvenile adjudication as a violation of G.S. 1949, 38-711 (1961 Supp.). The Pratt County Juvenile Docket Sheet provided by the State to the district court provides further evidence of Moore's crime. The docket sheet states Moore was found delinquent. In 1969, a juvenile could be found delinquent if the juvenile committed an act that would be a felony if done by an adult or by being adjudged a miscreant child three or more times. G.S. 1949, 38-802(b)(1)-(2) (1965 Supp.). Moore argues we do not know under which subsection he was found delinquent. But that is not

20

true. Moore stipulated to committing a felony. A juvenile is found to be a "miscreant" by committing an act that would be a misdemeanor if the person was an adult or by being found to be a "wayward child" three or more times. G.S. 1949, 38-802(c) (1965 Supp.). Being found to be a "miscreant" requires the commission of a misdemeanor, while being found to be a "delinquent" requires Moore to have committed a felony. Moore was found delinquent by committing an offense under G.S. 1949, 38-711 (1961 Supp.), which makes the offense a felony if he were an adult.

Under G.S. 1949, 38-711 (1961 Supp.):

"[A]ny person who shall accost, entice, or solicit a child under the age of fifteen (15) years with intent to induce or force said child to commit an immoral act, or to submit to an act of sexual intercourse, or an act of gross indecency, or any other act of depravity, or shall suggest to such child any of the aforementioned acts, shall on conviction thereof be deemed guilty of a felony . . . ."

Moore argues this provision is too broad to find a comparable offense because it criminalizes a broad range of conduct, some of which might not constitute crimes in Kansas.

In *Lowden*, the defendant's criminal history included a prior felony conviction in 1970 for solicitation of a minor in violation of G.S. 1949, 38-711 (1961 Supp.). The panel found when examining current crimes that constitute sexually violent crimes, none made "specific reference to enticing a child to commit 'an immoral act' or to submit to an 'act of depravity.'" *Lowden*, 38 Kan. App. 2d at 861. The panel noted G.S. 1949, 38-711 (1961 Supp.) criminalized solicitation of a child for various activities, some of which may not have been sexual. As an example, the panel provided that pouring gasoline on a sleeping vagrant and setting him on fire was surely an act of depravity but likely not sexual in nature. The panel held the district court, in using the prior conviction, had to go beyond the mere fact of this conviction to make the factual finding that the conviction involved

sexually motivated conduct. 38 Kan. App. 2d at 861-62. The panel held the conviction was not enough to establish the defendant was a persistent sex offender and vacated the sentence. 38 Kan. App. 2d at 863.

We acknowledge *Lowden*'s holding, but more information is available in the case before us. The docket sheet notes the criminal conduct in Moore's 1969 juvenile adjudication was "molesting." Molestation has two meanings:  (1) "The persecution or harassment of someone" or (2) "The act of making unwanted and indecent advances to or on someone, esp. for sexual gratification." Black's Law Dictionary 1204 (11th ed. 2019).

Molestation can hold either a sexual or a nonsexual meaning. Some prior Kansas cases help provide evidence of what "molesting" means in the context of G.S. 1949, 38-711 (1961 Supp.). In *State v. Smith*, 187 Kan. 42, 43, 353 P.2d 510 (1960), the defendant was charged with violating G.S. 1957, 38-711 by "feloniously accosting, enticing or forcing a child under the age of twelve years to commit an immoral act." The act was described as molesting at least one girl. 187 Kan. at 45.

In *State v. Taylor*, 198 Kan. 290, 291, 424 P.2d 612 (1967), the defendant was convicted of "molesting a child under the age of fifteen years, in violation of K.S.A. 38-711 (formerly 1961 Supp. 38-711)." The defendant accosted a 12-year-old boy and "committed an act of gross indecency upon him." 198 Kan. at 291. Further evidence the act was sexual was the district court's instruction that the admission of evidence of a prior child molestation conviction from Nebraska—a prior sexual offense—may be considered to show "'lustful disposition.'" 198 Kan. at 292.

Finally, in *State v. DeLespine*, 201 Kan. 348, 348, 440 P.2d 572 (1968), the defendant "was convicted on two counts of molesting a child under the age of fifteen years in violation of K.S.A. 38-711." The evidence showed the victim was touched in a

22

sexual manner two times, one of which required the victim's friends to pull the defendant off her.

Contemporary caselaw shows that when Kansas courts have discussed "molesting" in relation to G.S. 1949, 38-711 (1961 Supp.), they were referring to sexual acts. So the most logical reading of Moore's adjudication for molesting someone in violation of G.S. 1949, 38-711 (1961 Supp.) is that Moore's act was of a sexual nature.

The State offers four crimes that could constitute a comparable offense. Two—indecent liberties with a child and aggravated indecent liberties with a child—involve committing the sexual act, and two—indecent solicitation of a child and aggravated indecent solicitation of a child—involve soliciting a child to commit a sexual act.

Under K.S.A. 21-3503(a):

"(a) Indecent liberties with a child is engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age:
(1) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both; or
(2) soliciting the child to engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another."

K.S.A. 21-3504(a) provides:

"(a) Aggravated indecent liberties with a child is:
(1) Sexual intercourse with a child who is 14 or more years of age but less than 16 years of age:
(2) engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age and who does not consent thereto:

23

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both; or

(B) causing the child to engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another; or

(3) engaging in any of the following acts with a child who is under 14 years of age:

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both; or

(B) soliciting the child to engage in any lewd fondling or touching of the person of anther with the intent to arouse or satisfy the sexual desires of the child, the offender or another."

If Moore violated G.S. 1949, 38-711 (1961 Supp.) by committing a sexual act on a child under 15, either indecent liberties or aggravated indecent liberties would be the comparable crime to committing a sexual act. But it is impossible to choose between the two because each depends on the age of the victim—an unknown in Moore's 1969 juvenile adjudication. Fortunately, it does not matter because either crime is a person felony. K.S.A. 21-3503(c); K.S.A. 21-3504(c).

If Moore violated G.S. 1949, 38-711 (1961 Supp.) by soliciting a child under 15 to commit a sexual act, two other statutes—indecent solicitation of a child and aggravated indecent solicitation of a child—are the most comparable crimes.

Under K.S.A. 21-3510(a):

"(a) Indecent solicitation of a child is:

(1) Enticing or soliciting a child 14 or more years of age but less than 16 years of age to commit or to submit to an unlawful sexual act; or

(2) inviting, persuading or attempting to persuade a child 14 or more years of age but less than 16 years of age to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child."

K.S.A. 21-3511 provides, in relevant part:

"Aggravated indecent solicitation of a child is:

"(a) Enticing or soliciting a child under the age of 14 years to commit or to submit to an unlawful sexual act; or

"(b) inviting, persuading or attempting to persuade a child under the age of 14 years to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child."

As with indecent liberties with a child and aggravated indecent liberties with a child, we cannot determine which of these two crimes is the most comparable because we do not know the victim's exact age. But again, it does not matter because both crimes are person felonies. K.S.A. 21-3510(b); K.S.A. 21-3511.

We appreciate the fact that the details of Moore's 1969 juvenile adjudication are sparse. But we know Moore was adjudicated a delinquent for violating the felony provision of G.S. 1949, 38-711 (1961 Supp.). And we know Moore was adjudicated for "molesting." Caselaw shows "molesting" as it relates to G.S. 1949, 38-711 (1961 Supp.) was a sexual act, so Moore committed a sexual act in accosting, enticing, or soliciting a child under 15 with "intent to induce or force said child to commit an immoral act, or to submit to an act of sexual intercourse, or an act of gross indecency, or any other act of depravity . . . ." See G.S. 1949, 38-711 (1961 Supp.). There are several possible comparable offenses, depending on the exact nature of Moore's criminal acts leading to his 1969 juvenile adjudication. But we need not determine which of those crimes is the most comparable offense because all are person felonies. The district court did not err in classifying Moore's 1969 juvenile adjudication as a person felony.

25

3. *Moore's 1969 juvenile adjudication did not decay.*

Moore's final challenge to his 1969 juvenile adjudication is that the district court erred by not finding the adjudication decayed because the State did not prove the adjudication was not subject to decay.

Again, Moore gets the standard wrong. The State no longer bears the burden because Moore's stipulation to his criminal history at his 2005 sentencing satisfied the State's burden. Now, Moore bears the burden to prove the district court should have found his 1969 juvenile adjudication had decayed and should not have been included in his criminal history. See *Roberts*, 314 Kan. at 322.

K.S.A. 21-4710(d)(6) provides when certain convictions and adjudications decay and are not counted for criminal history purposes: "All juvenile adjudications which would constitute a person felony will not decay or be forgiven." Though the details of his 1969 adjudication are sparse, any of the likely comparable offenses based on the statutory language as discussed above are person felonies. Because any comparable offense would be a person felony, Moore's 1969 adjudication would not decay. The district court did not err by including the 1969 adjudication in Moore's criminal history.

G. *Moore's 1994 Oklahoma Lewd Molestation Conviction Not Used to Calculate His Criminal History Score*

Finally, Moore asserts the district court erred in classifying his 1994 Oklahoma lewd molestation conviction as a person felony because it did not have any identical or narrower elements to any Kansas person felony. Specifically, Moore argues the relevant Oklahoma statute has several possible ways in which it can be violated that are broader than any person offense in Kansas, plus there is no evidence as to which subsection Moore violated, making it impossible to determine a comparable Kansas offense. The

26

State responds that the case documents from the Oklahoma conviction show Moore was convicted of licking a minor's anus with his tongue, making Moore's prior conviction comparable to either indecent liberties or aggravated indecent liberties under Kansas law, both of which are person crimes.

We confess to being befuddled by Moore's argument. Moore's 1994 Oklahoma lewd molestation conviction was not used in 2005 to calculate his criminal history score; instead, it was used to declare him a persistent sex offender. See K.S.A. 21-4710(d)(11) (any prior conviction used to enhance applicable penalty not to be used in calculating offender's criminal history score); *Moore IV*, 2019 WL 6223782, at *2 (prior conviction used to declare offender persistent sex offender not to be included in criminal history score). Moreover, Moore claimed in his prior appeal that his 1994 Oklahoma lewd molestation conviction should not be included in his criminal history score for this reason, and both the State and the panel agreed. 2019 WL 6223782, at *2.

Admittedly, the transcript from Moore's 2020 resentencing appears to be unclear as to whether this conviction was used to calculate his criminal history score. The district court classified Moore's 1994 Oklahoma lewd molestation conviction as a person felony, even though the amended PSI report for this resentencing did not classify that conviction as a person crime, and found Moore had four person felonies in his criminal history. More pertinent is the fact that given Moore has three other person felonies in his criminal history, his criminal history score remains an A even without scoring this conviction. Thus, the issue is immaterial to resolving the correctness of Moore's criminal history score and is therefore moot. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) ("Kansas appellate courts do not decide moot questions or render advisory opinions. [Citation omitted.]").

The only other way we see how Moore's 1994 Oklahoma lewd molestation conviction could affect the legality of his sentence would be its use to declare him a

27

persistent sex offender. At the time of Moore's sentencing in 2005, a persistent sex offender was defined as one who had been convicted of a sexually violent crime and who had at least one prior conviction for a sexually violent crime. K.S.A. 2004 Supp. 21-4704(j)(2). The KSGA required the sentence for a persistent sex offender to be doubled. K.S.A. 2004 Supp. 21-4704(j)(1). However, Moore has never challenged the use of his 1994 Oklahoma lewd molestation conviction to designate him as a persistent sex offender, nor does he challenge that designation now. Thus, he has waived this issue. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are waived or abandoned).

CONCLUSION

We hold that Moore's original sentence from 2005 is a legal one, and the district court correctly classified Moore's 1984 Oregon first-degree burglary conviction and his 1969 Kansas juvenile adjudication as person felonies. We need not address whether Moore's 1994 Oklahoma lewd molestation conviction was properly classified as a person felony because it was not used to calculate his criminal history score. As Moore's most recent sentence mirrors his legal sentence from 2005, Moore's sentence is legal.

Affirmed.